# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRANDON L. KULP,                          :
                                          :
                        *Plaintiff,*      :
          v.                              :        2:24-cv-06769
                                          :
ILLINOIS TOOL WORKS INC. and              :
BROOKS INSTRUMENTS LLC,                   :
                                          :
                        *Defendants.*     :

## OPINION

Plaintiff Brandon L. Kulp ("Plaintiff") brings suit against his former employers, Illinois Took Works, Inc. ("ITW") and Brooks Instrument, LLC ("Brooks"), alleging disability discrimination, retaliation, and failure to accommodate under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.* Defendants move for summary judgment on all counts. For the reasons stated below, Defendants' Motion is denied.

## I.    Background[1]

Brooks is a subdivision of ITW. Defs.' Mot. Summ. J. ("MSJ") at Ex. A ("Blum Dep.") 21–23. Brooks has locations throughout the world; Plaintiff worked out of its Hatfield, Pennsylvania facility. *Id.* at 15:2–18; 62:14–15. In 2016, Brooks hired Plaintiff as an Applications Engineer. Defs.' MSJ at Ex. C ("Offer Letter"). Plaintiff

---

[1]    Per Judge Weilheimer's Policies and Procedures, the parties must meet and confer regarding a Joint Statement of Undisputed Facts. *See* J. Weilheimer's Guidelines at X.E.1. Submission of a Joint Statement does not preclude a party from asserting additional undisputed facts in a memorandum. *Id.* However, "no party shall unilaterally file a 'Statement of Undisputed Facts' setting forth its interpretation of the record." *Id.* Plaintiffs filed a separate Statement of Material Undisputed Facts. While the Court notes Plaintiff's disagreement with Defendants' exclusion of certain facts from the Joint Statement, Plaintiff's filing contravened Judge Weilheimer's guidelines.

suffers from juvenile myoclonic epilepsy. Defs.' MSJ at Ex. D ("Plf. Dep.") 171:17–18. In 2020–2021 and 2022, Plaintiff suffered from two seizures and lost his driver's license each time for approximately six months. Joint Statement of Undisputed Facts (SUF) ¶¶ 6–7, 12–13. During that time, coworkers drove him to work. Plf. Dep. 182:5–183:7. On November 21, 2021, Brooks promoted Plaintiff to Product Marketing Manager of the Vacuum and Pressure Business Unit, a position he held until his termination. Plf. Dep. 122:23–123:11, 124:10–12. Driving was not a job duty of a Product Marketing Manager. *Id.* at 252:1–2. Plaintiff reported to Christopher Fontana, Business Unit Manager for the Vacuum and Pressure Business Unit. Defs.' MSJ at Ex. B. ("Fontana Dep.") 12:16–18.

On May 29, 2024, Plaintiff had a seizure and lost his driving privileges for approximately six months. Plf. Dep. 177:1–8; Defs.' MSJ at Ex. H. The coworkers who previously drove Plaintiff to work on account of his prior suspension no longer lived close to him. Plf. Dep. 182:23–183:7. Plaintiff lives about twenty miles from the Hatfield facility. Plf.'s Resp. at Ex. 4, ¶ 1; Ex. 4-a.[2] From May 29 to July 7, 2024, Plaintiff was approved for and used Short-Term Disability (STD)/Family and Medical Leave Act (FMLA) leave. Defs.' MSJ at Ex. I. While Plaintiff was on leave, Plaintiff discussed the possibility of remote work with Fontana; Hans Sundstrom, Fontana's manager; Megan Schofield, Human Resources Manager; and Mark Blum, Vice President of Human Resources. Blum Dep. 51:2–52:16. Prior to Plaintiff's May 29 seizure, "it was never contemplated" whether he could work remotely. *Id.* at 51:16–

---

[2]     Defendants do not contest the authenticity of this document.

17. The outcome of that conversation was allowing Plaintiff to work remotely twice per week while his license was suspended. *Id.* at 52:18–22.

On June 5, 2024, Fontana told Plaintiff he had to work in the office at least three days per week and preferably four, but Brooks would be flexible with Plaintiff's "doctor's appointments and the needs of day-to-day life." SUF ¶ 19; Defs.' MSJ at Ex. J. During the week of July 8, 2024, Plaintiff worked remotely. Plf. Dep. 191:10–17; Fontana Dep. 51:1–18. On July 15, Schofield asked Plaintiff if he had a doctor's note clearing him to work. Plf.'s Resp. at Ex. 2. Plaintiff responded that he "started back last week" and would request a doctor's note. *Id.* Schofield responded: "Thank you Brandon and welcome back!" *Id.* On July 25, Plaintiff emailed Schofield stating that he would remain on leave until he and Brooks resolved his reasonable accommodation request. Defs.' MSJ at Ex. K. Schofield told Plaintiff to request a reasonable accommodation through The Hartford, Brooks's third-party leave of absence administrator. *Id.*; SUF ¶ 20. On July 31, Plaintiff's neurologist, Dr. Shilpa Pradhan, submitted medical documentation to The Hartford stating that Plaintiff cannot drive to his work site, but he can work full-time from home. SUF ¶ 20; Defs.' MSJ at Ex. L.

On August 7, 2024, Brooks's HR team prepared and sent a memo to The Hartford that ITW had also reviewed. Blum Dep. 54:7–12; Defs.' MSJ at Ex. M ("Brooks Memo"). The memo explained that Plaintiff's position required onsite presence at least 60% of the time; Plaintiff did not have to drive in conjunction with his job duties; and no "medical evidence" indicated "any disability-related medical

reasons" why Plaintiff could not work in-person.  Brooks Memo at 1–2.  It further stated that Brooks does not subsidize employees' travel, listed various methods of commuting, and concluded that Plaintiff's request lacked "proper justification" and would create "undue hardship." *Id.*  Additionally, the memo opined: "The issue appears to be that Mr. Kulp either does not wish to go through the effort of finding alternate transportation. . .and/or does not want to incur any additional [travel] expenses. . . ." *Id.* at 2.

On August 12, 2024, The Hartford informed Plaintiff that his remote accommodation request was denied.  Plf.'s Resp. at Ex. 7.  On August 13, Olivia Puch, HR Generalist, wrote to Plaintiff that he was on unapproved leave, and his STD pay would end on August 17.  Defs.' MSJ at Ex. N.  The letter also indicated that if The Hartford did not approve further STD benefits by August 28, he was subject to termination.  *Id.*  On August 14, Plaintiff emailed Schofield and requested to work remotely; for Brooks to fund a ride-share service to and from work; or for extended leave until his license was reinstated.  Defs.' MSJ at Ex. O.  The next day, Schofield responded that (1) management determined his position required majority onsite presence; (2) the company does not pay transportation costs, and paying Plaintiff's rideshare expenses would be "unfair and inequitable" to other employees; and (3) Plaintiff had to apply for an STD extension through The Hartford rather than through Brooks.  *Id.*  The Hartford then denied Plaintiff's STD extension for lack of evidence that his disability prevented him from working, citing a provider form received on August 16.  Defs.' MSJ at Ex. P.  The Hartford indicated that Plaintiff

could appeal the decision within 180 days, and The Hartford would reach a decision within 45 days. *Id.* On August 22, as part of Plaintiff's appeal, Dr. Pradhan wrote to The Hartford indicating that Plaintiff could not return to work and perform his job duties until September 3, 2024, but Dr. Pradhan nonetheless recommended a telework accommodation. Plf.'s. Resp. at Ex. 6.

On August 29, 2024, Schofield informed Plaintiff that his STD leave was not approved past July 7, 2024, and his employment was terminated effective that day. SUF ¶ 34; Defs.' MSJ at Ex. Q ("Termination Letter"). However, Plaintiff could continue pursuing short and long-term disability benefits through The Hartford. *Id.* Schofield and Blum made the decision to terminate Plaintiff. SUF ¶ 36. Plaintiff's termination paperwork indicated that he was not eligible for rehire, and the reason for termination was "voluntary." Plf.'s Resp. at Ex. 8 ("Termination Paperwork."). Following Plaintiff's termination, Darren Weinhold, Global Product Manager, officially absorbed Plaintiff's duties. SUF ¶ 42. It is undisputed that Plaintiff was not terminated for performance issues. Defs.' MSJ at Ex. R, ¶ 1 (explaining that Defendants fired Plaintiff because "he did not return from leave in accordance with company policy.")

## II.    Legal Standard

Summary judgment is appropriate "when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to [ ] judgment as a matter of law." *Mann v. Palmerton Area School District,*

872 F.3d 165, 170 (3d Cir. 2017) (citation and internal quotation marks omitted). A fact is "material" if, under the applicable substantive law, it is essential to the proper disposition of the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

The party moving "under Fed. R. Civ. P. 56(c) bears the burden of demonstrating the absence of any genuine issues of material fact. When determining whether there is a triable dispute of material fact, the court draws all inferences in favor of the non-moving party." *Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812, 819-820 (3d Cir. 2006) (citations and internal quotation marks omitted). The movant's initial burden does not relieve a complainant's obligation to produce evidence that would support a jury verdict. *Anderson*, 477 U.S. at 256. Because a motion for summary judgment looks beyond the pleadings, the non-movant must advance specific facts evincing a genuine dispute. *See Marshall v. Sisters of Holy Family of Nazareth*, 399 F.Supp.2d 597, 598 (E.D. Pa. 2005). The non-movant may not rest on their pleadings but must point to probative evidence tending to support the complaint. *Anderson*, 477 U.S. at 256. If the non-movant's evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–250.

## III.    Discussion

### a. Failure to Accommodate Claim[3]

The ADA requires employers to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an. . . employee," unless the employer shows that the accommodation "would impose an undue hardship on the operation of the business."   42 U.S.C. § 12112(b)(5)(A).   The Third Circuit has found "significant interplay" between failure to accommodate and discrimination claims under the ADA.  *See Fowler v. AT&T, Inc.*, 19 F.4th 292, 306–07 (3d Cir. 2021) (explaining that a failure to accommodate claim "may be viewed simply as a type of discrimination claim, where the relevant adverse employment action is the employer's 'refusal to make reasonable accommodations.'") (quoting *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 504 (3d Cir. 2010)).

A plaintiff bringing an ADA failure-to-accommodate claim must establish: "(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (quoting *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)).

To determine the appropriate reasonable accommodation, the employer and

---

[3]    The Court will address Plaintiff's failure to accommodate claim (Count III) first because Defendants' alleged failure to accommodate Plaintiff forms a partial basis for Plaintiff's disability discrimination claim (Count I).

employee may need to participate in an "interactive process" to "identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome [them]." 29 C.F.R. § 1630.2(o)(3).  Both parties must engage in the interactive process in good faith.  *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 312 (3d Cir. 1999).  "[A]n employer who acts in bad faith in the interactive process will be liable if the jury can reasonably conclude that the employee would have been able to perform the job with accommodations."  *Id.* at 317–318.

Plaintiff claims Defendants failed to accommodate him by denying two proposed accommodations:[4] (1) paying his commuting costs; and (2) allowing him to work remotely until his license was reinstated.  Plf.'s Mem. of Law at 18, 20.  Defendants counter that (1) Plaintiff's position required him to work onsite; (2) they accommodated him by offering short-term leave and partial remote work; and (3) his proposed accommodations were unreasonable.  Defs.' Mem. of Law at 2, ¶ 2, 15; Defs.' Reply at 8.  Because a genuine dispute of material fact persists as to whether Plaintiff could have worked remotely, the Court will deny summary judgment.[5]

---

[4]    Plaintiff further argues that his request for extended leave could also constitute a reasonable accommodation.  Plf.'s Mem. of Law at 20.  Because the Court finds a genuine dispute of material fact as to whether telework was a reasonable accommodation, it does not reach this argument.

[5]    Defendants have sufficiently shown that paying Plaintiff's transportation costs does not constitute a reasonable accommodation. Few plaintiffs have asserted a failure to accommodate claim based on an employer's refusal to fund their transportation. However, courts have recognized that Defendants' concerns regarding equity and financial expense can amount to undue hardship. *See, e.g., Kvorjak v. Maine*, 259 F.3d 48, 53 (1st Cir. 2001) (after state employer moved employees' worksite, crediting employer's equity concern with allowing disabled employee to work from home and not other employees when employer had no reason to suspect that ADA required granting telework request); *Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 546 (7th Cir. 1995) (where employee sought access to particular sink and employer already provided equivalent accessible sinks, rejecting idea that "an employer has a duty to expend even modest amounts of money to bring about an absolute identity in working conditions between disabled and nondisabled workers."). Additionally, Plaintiff's authorities are distinguishable. First, in *Colwell v. Rite Aid Corp.*, the employee requested a shift

"Generally, the question of whether a proposed accommodation is reasonable is a question of fact." *Buskirk v. Apollo Metals*, 307 F.3d 160, 170 (3d Cir. 2002). Courts are split on whether working from home is a reasonable accommodation depending on the circumstances of each case. For example, in *Pinegar v. Shinseki*, the court found a genuine dispute of material fact as to whether telework was a reasonable accommodation. 665 F. Supp. 2d 487, 502 (M.D. Pa. 2009). Factual issues persisted regarding whether the employee could perform the essential functions of her position at home, such as conflicting evidence on the frequency of in-person meetings. *Id.* at 501–02. Additionally, the fact that plaintiff successfully worked from home in the past undermined the employer's assertion that her position required in-person attendance. *Id.* Conversely, in *Galette v. Ave. 365 Lending Servs. LLC*, the Third Circuit found that an employee's failure to accommodate claim failed for the same reason as her discrimination claim: in-office presence was an "essential function" of her job. No. 24-1221, 2025 WL 429973, at *4 (3d Cir. Feb. 7, 2025). Most of her essential job functions, such as handling files and disbursing checks, could only be performed in-person. *Id.* at *3. Furthermore, her telework request would impose a "wholly impractical" burden because the employer had discontinued the remote

---

change, not subsidized transportation, and there was no evidence that the requested accommodation would financially burden the employer. 602 F.3d 495 (3d Cir. 2010). Second, in *Lyons v. Legal Aid Soc.*, the court did not hold as a matter of law that funding an employee's transportation was *per se* reasonable. 68 F.3d 1512 (2d Cir. 1995). Rather, 12(b)(6) dismissal was inappropriate because the employee plausibly alleged that requiring her employer to pay for a closer parking space could constitute a reasonable accommodation. *Id.* at 1517 (expressing "no view" as to whether the employer could demonstrate unreasonableness of the accommodation as a matter of law before trial). However, because Defendants have not shown as a matter of law that telework would impose an undue hardship, the Court denies summary judgment as to Plaintiff's failure to accommodate claim.

printing and scanning of checks due to security concerns. *Id.*[6]

Here, Plaintiff has established a genuine dispute of material fact as to whether Defendants failed to accommodate him by denying his request to telework. Defendants contend that they participated in the interactive process in good faith, allowing Plaintiff to take a leave of absence and work remotely for 1–2 days per week with flexibility for medical appointments. They further argue that Plaintiff's job required in-person attendance because he managed products exclusively designed and manufactured at the Hatfield facility and interfaced with the teams who supported those products. Defs' Mem. of Law at 2, ¶ 2. However, the record fails to support this assertion as a matter of law. For example, Fontana claimed Plaintiff had to report in-person because he worked with the teams who supported Hatfield products, including "internal quality, operations, sourcing, strategic sourcing, a number of groups as part of building up those products. . . ." Fontana Dep. 54:11–19. Plaintiff, however, described his work as supporting the teams who manufactured and designed the products rather than personally handling or inspecting the products. Plf. Dep. 128:13–132:23. For example, he worked "closely" with the engineering team to correct any issues with the products, but the engineering team "had to. . .actually go do the work," while Plaintiff kept the team on schedule. *Id.* at 129:17–18; 131:14–17. Similarly, if equipment malfunctioned, Plaintiff did not inspect, fix, or handle the equipment. Rather, he arranged status meetings to

---

[6]    *See also Van Zande*, 44 F.3d at 544 (finding that employer did not have to allow disabled employee to telework where she could not work without her office computer and explaining that most jobs require in-person teamwork and supervision, but noting that "[t]his will no doubt change as communications technology advances").

coordinate between different teams and communicate any issues with product shipments. *Id.* at 132:1–11. Accordingly, a jury could reasonably conclude that Plaintiff worked with teams whose job duties required in-person attendance, but Plaintiff could perform his duties from home.

Additionally, Defendants' claim that Plaintiff's job duties required him to be in-person is belied by evidence that Plaintiff briefly worked from home following his short-term disability leave. *See* Plf. Dep. 191:10–17; Fontana Dep. 51:1–18.[7] *See, e.g., Pinegar*, 665 F. Supp. 2d at 502–03 (plaintiff's past remote work presented genuine dispute of material fact as to whether plaintiff could perform essential job functions at home and thus whether remote accommodation was reasonable). The record also reveals a dispute as to whether Plaintiff worked from home during his prior seizures. *Compare* Plf. Dep. 107:20–108:3, 182:7–10 *with* Fontana Dep. 47:13–48:4. Finally, Plaintiff's position description mentions regular attendance; however, the description does not explain why regular attendance is necessary, and Blum admitted that "it was never contemplated" whether Plaintiff could work remotely prior to his 2024 seizure. Position Description; Blum Dep. 51:16–17. Based on the record before the Court, Plaintiff has established a genuine dispute of material fact as to whether Defendants made a good faith effort to accommodate him and whether they could have allowed Plaintiff to work remotely until his license was reinstated.

Defendants further argue that employees have no duty to provide

---

[7]    The parties dispute whether Plaintiff had the authority to work remotely from July 8–15, 2024. *Compare* Plf. Dep. 200:22–201:9 (stating that Fontana told Plaintiff he could work from home the week of July 7) *with* Fontana Dep. 51:1–5 (stating that Plaintiff worked without authorization for approximately 2–5 days).

accommodations that are irrelevant to the essential functions of their jobs. Defs.'

Mem. of Law at 6, 14–15. To support this proposition, Defendants cite *Brumfield v.*

*City of Chicago*, 735 F.3d 619, 632–33 (7th Cir. 2013) and *Beishl v. Cnty. of Bucks*,

2018 WL 6812132, at *5 (E.D. Pa. Dec. 27, 2018) (Savage, J.). Neither case is

persuasive here. First, the Seventh Circuit has qualified the holding of *Brumfield*,[8]

and the Third Circuit has not adopted *Brumfield*. Among the circuits faced with this

issue, some circuits agree with *Brumfield*, whereas others have found a duty to

accommodate employees who can perform their essential job functions without

accommodations.[9] Similarly, *Beishl* is non-precedential and factually distinct. In

---

[8]    *See Equal Emp. Opportunity Comm'n v. Charter Commc'ns, LLC*, 75 F.4th 729 (7th Cir. 2023). As the Seventh Circuit explained, *Brumfield*'s holding that an employer need not accommodate an employee who can do her job without accommodations was correct "as applied to Brumfield," who did not propose any accommodations "other than possibly the right to engage in unprofessional conduct at work." *Id.* at 739. However, *Brumfield* did not address "the more nuanced problems that can arise regarding attendance at work," such as accommodations to help an employee get to work more safely or without pain. *Id.* Therefore, the Court denied summary judgment where an employee requested an earlier work schedule because his disability made nighttime commuting unsafe. *Id.*

[9]    *Compare Unrein v. PHC-Fort Morgan, Inc.*, 993 F.3d 873, 878–89 (10th Cir. 2021) ("[E]mployers have no obligation under the ADA to accommodate disabled employees for problems they face outside the workplace unrelated to the essential job functions of their positions or privileges of employment merely because they are disabled."); *Buckley v. Consol. Edison Co. of New York*, 155 F.3d 150, 157 (2d Cir. 1998) (employee failed to state failure to accommodate claim because the proposed accommodation would not eliminate a barrier to job performance caused by his disability); *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 89 (1st Cir. 2012) *with Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 453 (5th Cir. 2013) (reversing summary judgment for employer after employee requested parking space, applying "the language of the ADA, and all available interpretive authority" and concluding that reasonable accommodations are not restricted to those which enable performance of essential job functions); *Hill v. Assocs. for Renewal in Educ., Inc.*, 897 F.3d 232, 239 (D.C. Cir. 2018) (a reasonable jury could find that classroom aide was a reasonable accommodation for teacher who could perform essential job functions without accommodation but not without pain, and accommodation would alleviate disability-related pain); *Hopman v. Union Pac. R.R.*, 68 F.4th 394, 402 (8th Cir. 2023) (rejecting, "at least in the context [of] this case" the argument that employers need only provide reasonable accommodations "when necessary [for] employees to perform the essential functions of their jobs.")

*Beishl*, the employee requested an accommodation to reduce his commuting time for his personal benefit, whereas Plaintiff has established a factual dispute as to whether he could get to work at all.  Given the lack of binding authority on the issue, the Court will not hold, as a matter of law, that Defendants had no duty to accommodate Plaintiff.

Accordingly, the Court denies summary judgment as to Plaintiff's failure to accommodate claim.

### b.  Disability Discrimination Claim

The ADA prohibits employers from discriminating against employees based on their disability.  42 U.S.C. § 12112(a).  Claims under the ADA are analyzed under the burden-shifting framework established in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973).  A plaintiff seeking recovery pursuant to the ADA must first establish a *prima facie* case of discrimination. To do so, a plaintiff must show: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination."  *Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 580 (3d Cir. 1998).  Courts must not apply the elements of a *prima facie* case woodenly but rather flexibly, tailored to fit the circumstances of the alleged discrimination.  *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 370 (3d Cir. 2008).    The *prima facie* requirement is "not onerous" and "easily met." *Id.* at 365 (applying Title VII *prima facie* standard to ADA *prima facie* case).

13

Once Plaintiff makes a *prima facie* showing, the burden "shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action." *Id.* at 370. If the defendant meets this burden, the plaintiff must show that the legitimate reasons offered by the defendant are a pretext for discrimination. *Id.* Discrimination under the ADA includes "adverse actions motivated by prejudice and fear of disabilities" and "failing to make reasonable accommodations for a plaintiff's disabilities." *Taylor*, 184 F.3d at 306. To defeat summary judgment, the plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

1. *Prima Facie Case*

Defendants argue that Plaintiff fails to meet the third prong of a *prima facie* case because they did not fire Plaintiff "as a result" of discrimination. Plaintiff counters by citing Defendants' denial of his accommodation requests and identifying two comparators whom Defendants permitted to work remotely as evidence of discrimination. Plf.'s Resp. at 10.[10]

To defeat summary judgment, Plaintiff can demonstrate that an employer "treated other, similarly situated persons not of his protected class more favorably." *Fuentes*, 32 F.3d at 765. These "comparators" must be similarly situated to the

---

[10]    Typically, comparators are relevant to pretext, but plaintiffs may also use comparator evidence to establish a *prima facie* case. *See Phillips v. Starbucks Corp.*, 624 F. Supp. 3d 530, 539 (D.N.J. 2022).

plaintiff "in all relevant respects." *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011). Determining whether comparators are similarly situated involves a number of case-specific factors including "showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009) (quotation marks omitted). Courts also compare the "job function" and responsibilities of each employee. *Galette*, 2025 WL 429973, at \*4 (citing *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296 (3d Cir. 2004). "[T]here is no doubt" that employees with "the same job responsibilities" are similarly situated. *Monaco*, 359 F.3d at 305–06. However, whether two individuals are similarly situated is generally a fact question reserved for a jury. *Onely v. Redner's Markets, Inc.*, 697 F. Supp. 3d 410, 422 (E.D. Pa. 2023) (Beetlestone, J.).

Here, Plaintiff identifies two non-disabled comparators whom Defendants permitted to work remotely: Wendy Dallman and Alexanda Davila. Plf.'s Resp. at 12. The parties dispute whether either comparator is proper. Dallman was an Inside Sales Manager from 2014–2022 and has worked as a Business Analyst in the Semi-Conductor Business Unit since 2023. Defs.' MSJ at Ex. S ("Dallman Dep.") 14:8–9, 27:1. Since 2014, she has worked remotely from Texas after Defendants relocated their factory from Allen, Texas to Hatfield, Pennsylvania. *Id.* at 15:21–24. She took three leaves of absence for surgery and childbirth. SUF ¶¶ 38–39. Defendants argue that Dallman has different job duties than Plaintiff; focuses on the Semi-Conductor

15

Business Unit; and works on externally manufactured products, whereas Plaintiff works on Vacuum and Pressure products designed and manufactured at the Hatfield facility. Defs.' Mem. of Law at 8–9. Plaintiff counters, *inter alia*, that Dallman and Plaintiff both report to Fontana; she has supported the same products Plaintiff manages; and she performs or has performed the same job duties listed as "essential duties and responsibilities" in Plaintiff's Position Description. Plf.'s Resp. at 12–13; Dallman Dep. 34:6–39:5; Plf.'s Resp at Ex. 1.

Davila was a Product Marketing Manager in the Semi-Conductor Business Unit and worked remotely from 2018 until she left the company in 2024. SUMF ¶ 41; Plf.'s Resp. at Ex. 10; Blum Dep. 65:21–23. Defendants permitted her to telework with occasional in-person visits, first on a temporary basis and then permanently.[11] Blum Dep. 66:16–68:17. Defendants argue that Davila is an improper comparator because, *inter alia*, she supported a different business unit and worked on products designed and manufactured in global facilities other than Hatfield. Defs.' Mem. of Law at 9. Plaintiff counters, *inter alia*, that Davila had the same job title and worked on two products designed and manufactured at the Hatfield facility. Plf.'s Resp. at

---

[11]    Defendants argue that Dallman's leaves of absence for surgery and post-partum recovery demonstrate that "any differences in treatment cannot be attributed to Plaintiff's medical condition." Defs.' Mem. of Law at 8, n. 3. This argument is unavailing. First, Defendants allowed Dallman to work remotely before and after her leaves of absence. Dallman Dep. 32:18–33:15. Setting aside Defendants' obligation under the FMLA to provide Dallman with maternity leave, recovering from surgery is a temporary impairment that likely would not qualify as a disability under the ADA. *See, e.g, McDonald v. Com. of Pa., Dep't of Pub. Welfare, Polk Ctr.*, 62 F.3d 92, 95 (3d Cir. 1995) ("Temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities.") (citing 29 C.F.R. Pt. 1630, App. § 1630.2(j)); *Gardner v. SEPTA*, 410 F. Supp. 3d 723, 736 (E.D. Pa. 2019) (Kenney, J.), *aff'd,* 824 F. App'x 100 (3d Cir. 2020) ("It is well settled. . .that a temporary, non-chronic impairment of short duration is not a disability covered by the ADA.") (quotation marks omitted). In any event, a jury is more equipped to determine whether the differences in Defendants' treatment of Dallman and Plaintiff are attributable to Plaintiff's disability.

13.

Given the parties' disagreement over whether Dallman or Davila held similar job responsibilities or worked on similar products as Plaintiff, the Court finds a genuine dispute of material fact as to whether they are proper comparators. Furthermore, Plaintiff has sufficiently suggested that he was fired "as a result" of Defendants' failure to accommodate him, which constitutes a form of discrimination under the ADA. Therefore, Plaintiff has established a *prima facie* case of discrimination for the purposes of summary judgment.

2. *Legitimate, Non-Discriminatory Reason*

Defendant stated that they terminated Plaintiff because his job required him to be in-person, and he refused to return to work. Defs.' Mem. of Law at 11. Plaintiff concedes that, "in a complete vacuum" before reaching pretext, Defendants have met this burden. Plf.'s Resp. at 14. Given their light burden at this stage, Defendants have sufficiently articulated a non-discriminatory reason for terminating Plaintiff.

3. *Pretext*

Plaintiff argues that Defendants' stated reason for firing him was pretextual. He claims he could not return to work because Defendants failed to accommodate his inability to drive, and he reiterates that Defendants permitted Dallman and Davila to work remotely. Plf.'s Resp. at 14. A jury could reasonably conclude that Defendants treated similarly situated, non-disabled employees more favorably. At minimum, Plaintiff has established a genuine dispute of material fact as to whether Dallman and Davila are proper comparators, and the fact that Defendants allowed

17

them to telework is not in dispute.  SUF ¶¶ 40–41; Blum Dep. 65:2–8.  Moreover, Plaintiff has cited record evidence to cast doubt on Defendants' proffered reason for firing him.  First, Plaintiff briefly worked from home after his short-term disability ended.  Additionally, as discussed, he has presented a genuine dispute of material fact as to whether his job required him to be onsite or whether he simply interacted with employees who had to be onsite.  Finally, Plaintiff has established a genuine dispute as to whether he was unable to commute to work or, as Defendants suggest, unwilling.  Therefore, a reasonable jury could conclude that Defendants' reasons for firing him were pretextual.

Accordingly, the Court denies Defendants' Motion for summary judgment as to Plaintiff's disability discrimination claim.

### c.  Retaliation Claim

The ADA provides: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or. . .made a charge. . . under [the ADA]." 42 U.S.C. § 12203(a) (2002). "Thus, it is unlawful for an employer to retaliate against an employee based upon the employee's opposition to anything that is unlawful under the ADA." *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 188 (3d Cir. 2003). Retaliation claims under the ADA proceed under the same framework as Tile VII claims. *Id.* To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer after or contemporaneous with the protected activity; and (3) a causal connection between the employee's protected

18

activity and the employer's adverse action.  *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).

In determining whether the plaintiff has sufficiently shown this "causal connection" on summary judgment, courts consider a "broad array of evidence," including "unduly suggestive temporal proximity" between the protected activity and adverse action, "intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus."  *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232–33 (3d Cir. 2007). However, "it is causation, not temporal proximity itself, that is an element of plaintiff's *prima facie* case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn." *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997).  Proving causation "necessarily involves an inquiry into the motives of an employer" and is "highly context-specific." *Id.*

If a plaintiff establishes a *prima facie* case of retaliation under the ADA, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse action.  *Krouse*, 126 F.3d 494 at 500.  If an employer satisfies this "relatively light" burden, the plaintiff must show that the employer's proffered reason is false, and retaliation was the "real reason" for the adverse employment action.  *Id.* at 501. The plaintiff must prove that "retaliatory animus played a role in the employer's decisionmaking process and. . .had a determinative effect on the outcome." *Id.*  A plaintiff may use either direct or circumstantial evidence to demonstrate retaliatory

19

animus. *Shellenberger*, 318 F.3d at 187.

Here, Plaintiff engaged in a protected employment activity: seeking accommodations. Defendants terminated Plaintiff after he requested accommodations. As for the "causal connection" prong, Defendants argue that Plaintiff has failed to show an unduly suggestive temporal proximity or other evidence of retaliatory animus. Defs.' Mem. of Law at 10. Plaintiff filed an accommodation request with The Hartford on July 31, 2024. Defs.' MSJ at Ex. J; SUF ¶ 21. Plaintiff requested accommodations again on August 14, and Defendants terminated his employment on August 29. Defs.' MSJ at Exs. O, Q. This timeline, without more, does not give rise to an inference of causation. *See, e.g., Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (three weeks in context of record as a whole did not support inference of retaliation). However, the record presents additional indicia of a "causal connection." These include the August 7, 2024 memo to The Hartford in which Defendants remarked that the "issue" with Plaintiff's situation was not his epilepsy but rather that he "either does not wish to go through the effort of finding alternate transportation. . .and/or does not want to incur any additional expenses [for]. . .alternate travel arrangements." Brooks Memo at 2. A reasonable jury could either credit this concern or infer retaliatory animus, finding that the memo mischaracterizes his inability to commute as an unwillingness to commute.

Further, the memo rejected Plaintiff's request to telework for six months and "possibly for some unknown time period in the future." *Id.* Defendants' concern

regarding indefinite remote work raises a hypothetical fact issue best resolved by a jury. *See, e.g., Equal Emp. Opportunity Comm'n v. Def. Ass'n of Philadelphia*, 408 F. Supp. 3d 621, 627–28 (E.D. Pa. 2019) (Rufe, J.) (viewing evidence in light most favorable to employee, finding that doctor's note suggested possibility of indefinite medical leave as a note of caution rather than a definitive recommendation).  Finally, when Schofield explained the bases for denial to Plaintiff, she omitted Defendants' concerns regarding indefinite remote work or Plaintiff's unwillingness to travel. Defs.' MSJ at Ex. O.  The memo states that Brooks does not subsidize any employee's travel costs, but Schofield's email expressly cites "equity" concerns for the first time. *See id.*  Comparing Defendants' internal memo with the external email to Plaintiff, a jury could attribute Defendants' inconsistent explanation for the denial to an attempt to conceal retaliatory animus.  A jury could infer that Defendants' equity concerns are either legitimate or pretextual.  Therefore, Plaintiff has established a *prima facie* case for the purposes of summary judgment.

Given Defendants' light burden, they have sufficiently articulated a legitimate, non-retaliatory reason for firing Plaintiff, that he refused to work in-person as his position required. Defs.' Mem. of Law at 11.  The burden now shifts to Plaintiff to show that retaliation was the "real reason" for his firing.  The fact-specific nature of this inquiry and the record before the Court preclude summary judgment on this issue.  For example, prior to Plaintiff's seizure, Blum, Schofield, Fontana, and Sundstrom had "never contemplated" whether Plaintiff's position required onsite presence.  Blum Dep. 51:14–52:6.  A jury could infer that Defendants engaged in a

good-faith discussion of Plaintiff's responsibilities.  Conversely a jury could infer that Defendants used the conversation as pretext to obscure the "real reason" for firing him.  Additionally, a jury could infer that the timeline of Plaintiff's accommodation and STD requests and his firing resulted from either legitimate business needs or retaliatory animus.  On August 12, 2024, The Hartford denied Plaintiff's remote accommodation request, which requested telework past Plaintiff's six-month license suspension into January 2025.  Plf.'s Resp. at Ex. 7.  The Hartford also denied Plaintiff's STD extension request.  MSJ at Ex. P.  On August 22, Dr. Pradhan submitted a letter to The Hartford indicating that Plaintiff could not perform his job functions, whereas she previously stated that Plaintiff could work remotely.  *Compare* Plf.'s Resp. at Ex. 6 *with* Defs.' MSJ at Ex. L.  Before The Hartford could decide the appeal, Defendants fired Plaintiff on August 29.  Plf.'s Resp. at Ex. 8.  The Hartford has indicated that the appeals process could take up to 45 days, and Plaintiff had a 180-day deadline to appeal.  Defs.' MSJ at Ex. P.

From this set of facts, the jury could infer two reasons for Plaintiff's termination.  On one hand, Dr. Pradhan inconsistently represented whether he could work from home, and given the 180-day deadline and decision timeline, the appeals process could take several months. Defendants further assert that Dr. Pradhan failed to provide information that would justify extending Plaintiff's STD leave, rendering Plaintiff's appeal "dead on arrival." Defs.' Reply at 5.  A jury could infer that allowing Plaintiff to stay home from work and indefinitely appeal the denial constitutes an undue hardship.  Conversely, because Defendants fired Plaintiff before he exhausted

22

his opportunity to appeal, a jury could infer that the "real reason" for firing Plaintiff was retaliation for requesting an accommodation.  Similarly, a jury could infer that Defendants improperly discounted Dr. Pradan's letter, substituting her medical conclusions with their lay opinion as to Plaintiff's ability to work onsite.  A jury may also discredit Defendants' statement that Plaintiff could continue appealing the STD denial and apply for long-term disability benefits because his termination paperwork indicated that he was not eligible for re-hire.  Defs.' MSJ at Ex. Q.

Further, the record is unclear as to whether a successful appeal would result in Defendants re-hiring Plaintiff or providing backpay.  Because a jury is more equipped to evaluate the credibility of Dr. Pradhan's medical conclusions and Defendants' explanation for terminating Plaintiff, the Court finds summary judgment inappropriate here.  Finally, the employee handbook permits Plaintiff twelve months of medical leave separate from short or long-term disability, and the record is unclear as to whether Plaintiff was entitled to additional leave under the policy when Defendants fired him. *See* Plf.'s Resp. at Ex. 3, p. 52. Accordingly, a jury could conclude that retaliatory animus had a determinative effect on Defendants' decision to fire Plaintiff.

Accordingly, Defendant's Motion for summary judgment as to Plaintiff's retaliation claim is denied.

### d. Conclusion

For the reasons stated above, the Court denies summary judgment as to

24

Plaintiff's disability discrimination, retaliation, and failure to accommodate claims under the ADA.  A separate order follows.


June 16, 2026                                    BY THE COURT:

                                                _____
                                                GAIL A. WEILHEIMER, J.